IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 18-417 |
| RODNEY KENT<br>a/k/a "Hott Rod,"<br>a/k/a "Hott" | :<br><br>: | Trial Date: July 29, 2019 |

## GOVERNMENT'S TRIAL MEMORANDUM

The United States of America, by its attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, Seth M. Schlessinger, Assistant United States Attorney for the District, respectfully submits this trial memorandum to assist the Court in the trial of this matter. The trial is scheduled to begin on July 29, 2019. The government expects the presentation of its evidence to last approximately two to three days.

### I.   THE INDICTMENT

The sole count of the indictment alleges that, from on or about June 7, 2016, through on or about June 23, 2016, the defendant committed the sex trafficking of a minor by force, threats of force, fraud and coercion, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(1), and 1591(b)(2).

**A.   Statutes Charged**

1. **18 U.S.C. § 1591** (sex trafficking of a minor or by force, fraud, or coercion) provides as follows:

(a) Whoever knowingly-

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, . . . [or] maintains . . . by any means a person;

. . .

knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a

commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be [guilty of a crime].

(c) [However, when] the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, [or] maintained, . . . the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

(e)(2) The term "coercion" means (A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process.

(e)(4) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

(e)(3) The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

B. **Elements of the Offenses**

    1. **18 U.S.C. §§ 1591(a)(1), 1591(b)(1), 1591(b)(2)** (sex trafficking of a minor or by force, threats of force, fraud or coercion)

In order to establish that a defendant committed the crime of sex trafficking of a minor or by force, threats of force, fraud or coercion, the government must prove beyond a reasonable doubt each of the following elements:

First:    Defendant knowingly recruited or enticed or harbored or transported or provided or obtained or maintained by any means a person;

Second:    Defendant knew, or recklessly disregarded the fact, <u>either</u>

that means or threats of force, fraud, or coercion would be used against the person to engage in a commercial sex act; <u>or</u>

          that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act; <u>or</u>

          Defendant had a reasonable opportunity to observe the person who had not attained the age of 18 years and knew, or recklessly disregarded the fact, that the person would be caused to engage in a commercial sex act; and

Third:    Defendant's acts were in or affecting interstate or foreign commerce.

## II.  THE GOVERNMENT'S CASE

### A.  Facts

On June 23, 2016, Tinicum Township police officers were notified that a runaway minor female ("Minor 1") had contacted her father and notified him that she was at the Motel 6 located at 43 Industrial Highway in Tinicum (near Philadelphia International Airport).  Police officers responded to the Motel 6 and found Minor 1, a seventeen-year-old girl, in the lobby.  Minor 1 was recovered by the officers and agreed to be interviewed.

In early June 2016, Minor 1 ran away from home.  Using Skout (a social-networking, messaging and dating application), Minor 1 met an unidentified male who agreed to pick her up at a fast-food restaurant near Minor 1's school.  This man transported Minor 1 to Philadelphia, but left Minor 1 at Minor 1's cousin's house in north Philadelphia the next day.  Minor 1 then logged back in to Skout, where she met a person going by the name "Hott," subsequently identified as the defendant.[1]  Through Skout, the defendant made arrangements to meet Minor 1 in person.

The defendant picked up Minor 1 and drove her to the defendant's house, located at 724 N. 40th Street in West Philadelphia (on the northwest corner of 40th and Aspen Streets).  Once at the defendant's house, the defendant explained that he wanted Minor 1 to work for him.  The

---

[1] Minor 1 subsequently identified the person depicted in a photograph of the defendant maintained in law enforcement records as the person known to her as "Hott."

defendant reasoned that he needed money, and that Minor 1 did not have anyone else to look out for her.  The defendant explained that he would post Internet advertisements offering Minor 1 for commercial sex on the website Backpage, and that Minor 1 would be required to have sex with the men who responded.  Minor 1 felt that she was dependent upon the defendant under the circumstances, and initially believed that the defendant genuinely cared about her, so she agreed to his terms.

The defendant first required Minor 1 to have sex with several of his friends, collecting money from each of them after she did so.  The defendant next used his cell phone to take suggestive photographs of Minor 1 in her underwear to be used in the Backpage advertisements.  The defendant posted multiple Backpage advertisements using those photographs, in which Minor 1 was referred to as one of two aliases devised by the defendant.  The defendant gave Minor 1 a cell phone which she was to use in order to communicate with customers who responded to the online advertisements.

The defendant further instructed Minor 1 to search each customer for weapons as he arrived, and to get the money for the date from each customer and to bring it to the defendant to be counted before engaging in any sexual activity.  Prices for commercial sex acts with Minor 1 were set by the defendant and varied according to the length of time the customer sought to spend with Minor 1.  Minor 1 was required to give the defendant all of the money paid by each customer, and was not permitted to keep any of the proceeds.  The defendant explained to Minor 1 that Minor 1's compensation consisted of the food, shelter and clothes provided by the defendant.  The defendant occasionally paid for Minor 1 to have her hair styled or to get manicures or pedicures at a nail salon near Kent's house.  The defendant instructed Minor 1 that, if anyone asked, Minor 1 should tell others that the defendant was her uncle, and that Minor 1 was staying with him for the summer.

Over the next few weeks, Minor 1 conducted numerous commercial sex acts at the defendant's house for the defendant. Minor 1 communicated with customers who called or sent text messages in response to the Backpage advertisements, and the customers arrived at the defendant's house to engage in commercial sex. Minor 1 expressly informed the defendant early in the period during which the defendant prostituted her that she was seventeen years old and that she had run away from home, which did not dissuade the defendant from continuing to prostitute Minor 1.

The defendant was often violent with Minor 1, frequently punching and slapping Minor 1 for perceived disobedience. The defendant further beat his minor victim with a belt buckle, pulled her hair, spit in her face, and stubbed out lit cigarettes on her body on multiple times. During her initial interview, Minor 1 showed law enforcement officers approximately eight to ten separate scars on her abdomen and back that had been caused by the defendant stubbing cigarettes out on her. Minor 1 also showed the officers apparently fresh bruises on her legs that had resulted from a recent beating inflicted by the defendant. The defendant also frequently verbally abused Minor 1, often hurling various obscene insults at her.

Most of Minor 1's commercial sex acts for the defendant occurred at the defendant's house. However, for an increased price, the defendant would arrange for one of his associates to transport Minor 1 to the client's residence to conduct the commercial sex act there. On a few occasions, the defendant also required Minor 1 to stand on the street and attempt to find potential clients in person with whom to conduct commercial sex acts at the defendant's house. On one such occasion, Minor 1 met an adult male who advised against Minor 1's continuing to work for the defendant, and instead took Minor 1 to the Motel 6 in Tinicum. Minor 1 then contacted her father, who in turn contacted law enforcement, resulting in Minor 1's recovery. While Minor 1 was speaking with law enforcement officers, she continued to receive Skout messages from the

defendant, including: "Get the f*** home now bitch!!! And bring Daddy whatever doe you have. You got that?"

Through Minor 1, law enforcement officers obtained and preserved the Skout messages between her and the defendant, which include the initial messages through which Minor 1 and the defendant were introduced to each other, and also messages demonstrating the defendant's prostitution of Minor 1 such as, among others: "Tell him $30. And he got 15 mins. And need a condom"; "Ask him if he got a condom, if so get the $20 first, then f*** him and leave. Get a cab to me afterwards. Why the f*** you aint answering?"; and "B***h did you do what i said?" Information obtained from Skout via subpoena revealed that the user of the Skout account corresponding with Minor 1 in those messages registered the account with the email address "hizottrizod@gmail.com" and the user name "hottestrod2."[2] The aforementioned email account was also used to post several of the Backpage advertisements posted by the defendant depicting Minor 1; others similarly depicting Minor 1 were posted using the email address "hottrod112993@gmail.com." (11 and 29 represent the month and day, respectively, of the defendant's date of birth.)

### B.    Government Witnesses

The following witnesses, among others, may testify in the government's case-in-chief:

1. Minor 1, referenced above, and Minor 2, another minor who was recruited by the defendant to perform commercial sex acts, as described in more detail in the government's response to the defendant's motion to exclude evidence [DE 40]

2. FBI Special Agent Glenn Booth

3. Tinicum Township Police Department Sergeant James Simpkins

---

[2] The picture associated with the account profile is a picture of the defendant.

      4.      Dr. Lisa Rae, Director, Temple Burn Center[3]

      5.      Javon Maurice Vann

### C. Anticipated Evidence

The government anticipates that the evidence presented in its case-in-chief will include some or all of the following items, among other items:

1. Birth certificates of Minor 1 and Minor 2

2. Photographs of Minor 1 taken upon her recovery by law enforcement officers documenting her injuries

3. Exterior photographs of 724 N. 40th Street and its environs

4. Internet advertisements offering Minor 1 for commercial sex acts, and payment and account information associated with the advertisements

5. Subscriber information for e-mail addresses and telephone numbers used by the defendant

6. Text messages exchanged between the defendant and Minor 1 through Skout and Kik

7. Mail addressed to the defendant and other items recovered during the execution of a search warrant by the Philadelphia Police Department at 724 N. 40th Street in 2018

8. Rental records from Motel 6 in Tinicum, Pennsylvania

## III. PRE-TRIAL MOTIONS

The Court previously granted in part and denied in part the defendant's motion to exclude from evidence a letter addressed to "Rodney Kent (Pimp)" at 724 N. 40th Street, Philadelphia, Pennsylvania, ruling that the word "Pimp" shall be redacted from the letter. See DE 36 (motion); DE 42 (order). The defendant's motion to exclude evidence of trafficking and/or physical abuse of persons other than Minor 1 (including but not limited to Minor 2) remains pending. See DE

---

[3] A letter notice of intent to qualify Dr. Rae as an expert witness at trial and present her expert testimony has been provided to counsel for the defendant.

37 (motion); DE 40 (government's response).   No other motions are currently pending before the Court.

## IV.     OTHER ISSUES

The government reserves the right to call rebuttal witnesses in the event the defendant elects to present evidence or testimony in the defense case.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

        */s/ Seth M. Schlessinger*
SETH M. SCHLESSINGER
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street
Philadelphia, PA 19106

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the date listed below, I filed a copy of the foregoing document with the Clerk of Court, and served a copy upon all counsel of record, via CM/ECF.

*s/Seth M. Schlessinger*
SETH M. SCHLESSINGER
Assistant United States Attorney

Date:   July 18, 2019