# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

          v.              :        **CRIMINAL NO. 18-417**

RODNEY KENT            :
     a/k/a "Hott Rod"
     a/k/a "Hott"

## <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

Defendant Rodney Kent, then a 44 year-old man, lured and then subjected a 17 year-old girl to two weeks of hell: forced commercial sex, accompanied by anal rape, beatings, cigarette burns, and threats of even more violence. As the victim detailed during her harrowing testimony in two trials, this was a horrific crime. Kent poses a great danger to the community, especially to women and adolescent girls whom he would prey on in the same fashion. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory Guidelines range of 360 months to life.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either Kent or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory Guidelines range and of the Section 3553(a) factors, which support a within-Guidelines sentence in this case.

## I.    <u>BACKGROUND</u>

In June 2016, the victim, E.R., ran away from home. Using Skout (a dating application), E.R. met an unidentified male who agreed to pick her up near E.R.'s school. This man soon left E.R. in North Philadelphia. Shortly thereafter, E.R. logged back on to Skout and met Kent, who led E.R. to believe that he had a romantic interest in her.

Kent and his friend picked up E.R. When Kent's friend remarked that E.R. looked "too young," E.R. informed them that she was 17 years old. Kent responded, "It's cool," and they drove E.R. to Kent's home in West Philadelphia. After having sex with E.R., Kent smoked marijuana with her. Only then did Kent tell E.R. that he was low on rent and that he needed money. Kent told E.R. that she could stay if she went to work for him by engaging in

commercial sex. Kent explained that he would post Internet advertisements offering E.R. for commercial sex on the website Backpage.com ("Backpage") and that E.R. would have sex with the men who responded. As a result of Kent's exploitation, force, and coercion, E.R. agreed.

Kent used his cell phone to take suggestive photos of E.R. in her underwear. He posted multiple Backpage ads with those photos, offering E.R. for commercial sex. Kent set prices for commercial sex acts with E.R. He instructed E.R. that she was required to give Kent all of the money paid by each customer. Kent explained that E.R.'s compensation consisted of the food, shelter and clothes provided by Kent. In addition, he occasionally paid for E.R. to have her hair styled or to get manicures or pedicures. Over the next two weeks, E.R. conducted numerous commercial sex acts at Kent's home. Kent kept all of the proceeds from customers who paid to violate E.R.

Kent anally raped and punched E.R. for perceived disobedience. Kent also beat her with a belt buckle, spit on her, and stubbed out lit cigarettes on her body.[1] At one point, he even threatened E.R. with a gun. Kent engaged in further coercion of E.R. by stating that, if he found other girls who had ran away after working for him, he would hurt them.

At trial, the government introduced overwhelming evidence that corroborated E.R.'s account of being sex trafficked by Kent through his violence and threats. This evidence included testimony from law enforcement officers, an FBI forensic examiner, and a medical expert in burn injuries. With E.R.'s assistance, law enforcement officers obtained printouts of her Skout

---

[1] After her recovery, E.R. showed law enforcement officers numerous wounds on her abdomen and back that had been caused by Kent putting out lit cigarettes on her. E.R. also showed the officers fresh bruises on her legs that had resulted from a recent beating inflicted by Kent.

messages with Kent, which included messages showing how they met online. As shown in a sampling below, Kent's Skout messages also established his sex trafficking of E.R.:

- Tell him $30

- And he got 15 mins

- And need a condom

- Tell me what he says

- How long he want you for?

- And b**** you dont have to do s*** but what I tell you

- And 70 aint enough for anal

- Ask him if he got a condom, if so get the $20 first, then f*** him and leave

- Get a cab to me afterwards

- Why the f*** you aint answering?

- B**** did you do what i said?

Moreover, the government introduced an avalanche of electronic evidence confirming Kent's sex trafficking of E.R. *See* Government Exhibit 125. This evidence showed that Kent used his own phone number (267-490-6801) and his email address hottrod112993@gmail.com to advertise E.R. for commercial sex on Backpage. Of course, 11 and 29 represent the month and day, respectively, of Kent's date of birth.

On June 17, 2022, after a three-day trial, the jury found Kent guilty of one count of sex trafficking. In interrogatories, the jury also found beyond a reasonable doubt that (1) Kent knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion would be used to cause E.R. to engage in a commercial sex act; (2) Kent knew or recklessly disregarded the fact that E.R. had not obtained the age of 18 years and would be caused to engage in a commercial

sex act; and (3) Kent had a reasonable opportunity to observe E.R., who had not obtained the age of 18 years, and knew or recklessly disregarded the fact that E.R. would be caused to engage in a commercial sex act.

## II.   SENTENCING CALCULATION

### A.   Statutory Maximum and Mandatory Minimum Sentence.

The maximum sentence that may be imposed on Kent is life in prison. The mandatory minimum term of imprisonment is 15 years (180 months).

### B.   Sentencing Guidelines Calculation.

The Probation Office correctly calculated Kent's advisory guideline range as follows:

| | |
|---|---|
| Base Offense Level, USSG § 2G1.3(a)(1) | 34 |
| Unduly influencing a minor, USSG § 2G1.3(b)(2)(B) | +2 |
| Use of a computer to offer the minor, USSG § 2G1.3(b)(3)(B) | +2 |
| Offense involved commission of sex act, USSG § 2G1.3(b)(4)(A) | +2 |
| Total | 40 |

PSR ¶¶ 22-33. With a Total Offense Level of 40 and a Criminal History Category of III, Kent faces an advisory guideline range of 360 months to life. PSR ¶¶ 35-42, 98.

## III.   ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one within the advisory guideline range of 360 months to life.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual

- 5 -

sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A.      **Consideration of the 3553(a) Factors.**

Kent engaged in monstrous violence against a vulnerable victim. He preyed on E.R., a runaway teenager, who had nowhere else to turn. Kent forced E.R. to engage in commercial sex through anal rape, beatings, cigarette burns, and threats of even more violence. She was subjected to extreme pain, shame, and humiliation. E.R. will live with the destructive impact of

Kent's crime for the rest of her life. The devastating physical, emotional, and psychological impact on the victim cannot be overstated, and the sentence in this case must reflect that severity.

Indeed, the circumstances of this case are truly horrific and justify a Guidelines sentence. Kent's heinous conduct falls squarely within the class of cases to which the applicable Guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of a Guidelines sentence.

Kent has a history of violence, having been previously convicted of assault on two separate occasions. One of those assaults involved beating a victim in the head, body, and legs with a lead pipe, resulting in that victim's hospitalization and surgery. Kent's criminal history also includes two convictions for drug trafficking. He also violated his parole in 2006.

It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). The recommended sentence of incarceration affords adequate deterrence to others who would commit sex trafficking, and protects the public from further crimes of Kent, for at least as long as he remains incarcerated. *Id.* In addition, adherence to the recommended Guidelines range is the only course for assuring that Kent's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). *See* PSR ¶¶ 77, 80, 85, 88. Also, restitution is not an issue in this case. § 3553(a)(7).

Kent must be held responsible for his unspeakable violence against E.R., and he has proven to be a menace to the community. Accordingly, as explained above, all the appropriate considerations of sentencing, such as the nature of the offense and the character of the offender, call for substantial incarceration in order to protect society from his future criminal conduct.

Thus, all of the appropriate considerations of sentencing favor the imposition in this case of a within-Guidelines sentence. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 133 S. Ct. at 2084, and that guide is once again persuasive in this case.

## IV.     CONCLUSION

For these reasons, the government recommends that the Court impose a sentence within the advisory Guidelines range of 360 months to life.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


*/s Vineet Gauri*
Vineet Gauri
Alexandra M. Lastowski
Assistant United States Attorneys

- 8 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:


Mark E. Cedrone, Esq.
mec@saxtonstump.com


*/s Vineet Gauri*
Vineet Gauri
Assistant United States Attorney


DATED: December 8, 2022